**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GE RENEWABLES NORTH AMERICA, LLC,

                        Plaintiff,

        v.

SKF USA INC.,

                        Defendant.

Case No. 23 Civ. 9274 (PKC)

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Dated: May 24, 2024

Jeff E. Butler
Sanaz Payandeh
Tala Brewster
Sophie Brill
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001

*Attorneys for GE Renewables North*
*America, LLC*

## TABLE OF CONTENTS

Page

Introduction.................................................................................................................................1

Factual Background .....................................................................................................................2

    A.    GERNA Purchases of SKF Main Bearings ...........................................................2

    B.    Agreements Governing the Purchases ....................................................................3

    C.    Premature Failure of SKF main bearings................................................................5

Argument .....................................................................................................................................6

I.          THE COURT HAS PERSONAL JURISDICTION OVER SKF. ..........................6

    A.    GERNA's Claims Are Related to SKF's Transaction of Business in
         New York................................................................................................................6

    B.    The Exercise of Personal Jurisdiction Over SKF Would Not Offend
         Due Process.............................................................................................................9

II.        VENUE IS PROPER IN NEW YORK, BUT ONLY IN THE
          NORTHERN DISTRICT OF NEW YORK. ........................................................11

III.     THIS ACTION SHOULD NOT BE TRANSFERRED TO THE
          NORTHERN DISTRICT OF GEORGIA..............................................................13

    A.    The Forum Selection Clause in the Supply Agreement Has Been
         Superseded by the Forum Selection Clause in the Tolling Agreement. ................14

    B.    The Forum Selection Clause in the Supply Agreement Does Not
         Govern Claims Based on Purchases After the Expiration of the Supply
         Agreement..............................................................................................................15

    C.    In Any Event, Transfer of This Action to the District of Georgia
         Would Be Unreasonable. .......................................................................................16

IV.     GERNA'S BREACH OF WARRANTY CLAIMS SHOULD NOT
          BE DISMISSED. ..................................................................................................19

    A.    Breach of Express Warranty. ................................................................................19

    B.    Breach of Implied Warranty. .................................................................................21

Conclusion .................................................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
98 F.3d 25 (2d Cir. 1996) .......................................................................................... 7

*Anadigics, Inc. v. Raytheon Co.*,
903 F. Supp. 615 (S.D.N.Y. 1995) .......................................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................. 19

*Asoma Corp. v. SK Shipping Co., Ltd.*,
467 F.3d 817 (2d Cir. 2006) .................................................................................... 15

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
571 U.S. 49 (2013) ...................................................................................... 16, 17, 18

*Bank of Am., N.A. v. Wilmington Tr. FSB*,
943 F. Supp. 2d 417 (S.D.N.Y. 2013) ........................................................ 13, 17, 18

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012) ........................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................. 19

*Bensusan Rest. Corp. v. King*,
126 F.3d 25 (2d Cir. 1997) ........................................................................................ 6

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ........................................................................................ 6

*D&R Glob. Selects., S.L. v. Bodgea Olegario Falcon Pineiro*,
29 N.Y.3d 292 (2d Cir. 2017) .................................................................................... 7

*DiStefano v. Carozzi N. Am., Inc.*,
286 F.3d 81 (2d Cir. 2001) ........................................................................................ 6

*Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013) ........................................................................................ 6

Page(s)

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005) ................................................................. 12

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ................................................................. 19

*Lead Indus. Ass'n Inc. v. OSHA*,
  610 F.2d 70 (2d Cir. 1979) ................................................................... 13

*Liquid Carriers Corp. v. Am. Marine Corp.*,
  375 F.2d 951 (2d Cir. 1967) ................................................................... 9

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014) ................................................................. 16

*McGee v. Int'l Life Ins. Co.*,
  355 U.S. 220 (1957) ............................................................................... 9

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
  295 F. Supp. 3d 404 (S.D.N.Y. 2017) ..................................................... 6

*Nielsen v. Rabin*,
  746 F .3d 58 (2d Cir. 2014) ................................................................. 19

*Phillips v. Audio Active Ltd.*,
  494 F.3d 378 (2d Cir. 2007) ................................................... 11, 12, 16

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
  450 F.3d 100 (2d Cir. 2006) ................................................................... 7

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ................................................................... 7

*Vann v. Fischer*,
  2012 WL 2384428 (S.D.N.Y. June 21, 2012) ........................................ 12

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................... 9

*Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*,
  431 F.Supp.2d 955 (S.D. Iowa 2006) .................................................... 18

*Wickers Sportswear, Inc. v. Gentry Mills, Inc.*,
  411 F. Supp. 2d 202 (E.D.N.Y. 2006) ..................................................... 7

Page(s)

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286, 297 (1980) ................................................................................. 9, 10

**Statutes and Rules**

28 U.S.C. § 1391 ................................................................................. passim

28 U.S.C. § 1404 ................................................................................. passim

C.P.L.R. 302(a)(1) ................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ................................................................................. 19

**Other Authorities**

U.C.C. § 2-315 ................................................................................. 21

Plaintiff GE Renewables North America, LLC ("GERNA") submits this Memorandum of Law in opposition to the Motion to Dismiss of Defendant SKF USA Inc. ("SKF"). This opposition is also supported by the accompanying Declaration of David A. Mollevik dated May 23, 2024 ("Mollevik Decl.") and the Declaration of Jeff E. Butler dated May 24, 2024 ("Butler Decl.").

## Introduction

In this action, GERNA seeks to recover the costs associated with repeated failures of wind turbine main bearings manufactured by SKF. Purchase orders were issued by GERNA for these main bearings in 2017, 2018 and 2019, and many of the purchase orders are governed by a framework Supply Agreement between SKF and GERNA's parent, General Electric Company. The Supply Agreement and purchase orders are all governed by New York law, but the events relevant to this dispute are geographically dispersed over many U.S. states as well as countries outside the United States. As a result, there is no single "center of gravity" for this dispute.

GERNA seeks to litigate these claims, if possible, in a single forum that has a logical connection to this dispute and is reasonably convenient for both GERNA and SKF. A court in New York is the obvious first choice given that New York law applies and New York is geographically convenient to GERNA and SKF alike. In addition, at least one set of purchase terms relevant to this dispute specifies the Southern District of New York as the appropriate forum for any dispute.

Unfortunately, as the facts have developed, GERNA has concluded that the Southern District of New York is not the proper intrastate venue under 28 U.S.C. § 1391(d). This is because the contacts giving rise to personal jurisdiction over SKF in New York were mainly in the Northern District of New York and, for purposes of venue, each judicial district within New York is treated as a separate state for residency purposes. Thus, while SKF clearly is a resident

- 1 -

of New York for venue purposes, it appears to be a resident only of the Northern District of New York. Accordingly, GERNA respectfully suggests that *sua sponte* transfer of this action to the Northern District of New York would be appropriate.

In all other respects, SKF's motion to dismiss should be denied. The Court has personal jurisdiction over SKF based on its contacts with New York, including in-person meetings in New York with respect to the amendment that added the main bearings at issue here to the pre-existing Supply Agreement. This action should not be transferred to the Northern District of Georgia because Georgia has no logical connection to this case. Finally, on the merits, GERNA has adequately pleaded its claims for breach of express warranty and breach of implied warranty.

## Factual Background

GERNA is a limited liability company organized under the laws of Delaware with its principal place of business in Pensacola, Florida. GERNA also maintains an office in Schenectady, New York. The sole member of GERNA is General Electric Company ("GE"), a New York corporation with its principal place of business in Boston, Massachusetts. (Am. Compl. ¶ 4.) SKF is a Delaware corporation with its principal place of business in Lansdale, Pennsylvania. (*Id.* ¶ 5.)

### A.    GERNA Purchases of SKF Main Bearings

GERNA manufactures and sells wind turbines for electric power generation. (*Id*. ¶ 4.) The main bearing is a key component of a wind turbine. It holds the shaft connecting the rotor assembly to the generator and allows the shaft to rotate freely despite being subject to substantial loads during normal operations. A main bearing generally consists of an inner ring attached to the shaft and an outer ring attached to the turbine casing. Between these rings are rollers, which allow the inner ring to rotate independently from the outer ring. (*Id.* ¶ 9.)

The main bearings at issue in this case were a "build to spec" part. GERNA provided a

part specification to SKF, and SKF designed a main bearing to meet the specification. The final specification for this part is dated November 15, 2017, and it incorporates a technical specification and various load specifications. (*Id.* ¶ 10.)

The GERNA technical specification makes it clear that the main bearing must have a useful life of 20 years. For example, the specification states: "The main bearing has to handle loads for the specified wind class for a period of 20 years. In addition, it must sustain transient loads like grid failure, over-speed events, braking and emergency stops as well as loads due to extreme wind and environmental conditions." (*Id.* ¶¶ 11-12.)

The design process for the SKF main bearing took place in 2016 and 2017. The final SKF design used, among other elements, a floating guide ring and a diamond-like coating on the rollers. The SKF part number for the main bearing is 240/750 ECA/W33V039RE10. (*Id.* ¶ 13.)

GERNA began ordering this part from SKF in late 2017. GERNA purchased a total of 1,723 of the SKF main bearings, with approximately 1,300 ordered in 2018 and 400 ordered in 2019. GERNA discontinued purchasing main bearings from SKF in June 2019. (*Id.* ¶ 15.)

## B.    Agreements Governing the Purchases

GERNA's purchases in 2017 and 2018 were governed by a Supply Agreement between SKF and GE, acting through its Power & Water Business, that was entered in January 2015 (the "Supply Agreement"). The Supply Agreement includes an Appendix 1 that specifies the SKF parts covered by the Supply Agreement. At the time the Supply Agreement was entered, Appendix 1 did not include the main bearing at issue in this case, as that part had yet to be developed by SKF. The Supply Agreement also includes an Appendix 2, which is a version of the GE Power & Water Standard Terms of Purchase (the "Original Purchase Terms"). (*Id.* ¶¶ 17-18.)

The Original Purchase Terms state that New York law governs purchases under the

- 3 -

Supply Agreement.  It also contains a forum selection clause stating that litigation may be brought "only in the U.S. District Court for the Northern District of Georgia or, if such court lacks subject matter jurisdiction, in the State or Superior Court of Georgia in Cobb County." (Gray Decl. Ex. A, App. 2, § 21.1.)

As originally entered, the term of the Supply Agreement expired on January 1, 2018. (*See id.* § 3(a).)  On or about December 14, 2017, GE and SKF amended the Supply Agreement in a document titled "Addendum Number Two."  Addendum Number Two added the main bearing at issue in this case—SKF part number 240/750 ECA/W33V039RE10—to Appendix 1 to the Supply Agreement.  The new Appendix 1 set the pricing for this part and provided for a committed volume in 2018 equal to 30% of direct material requirements for GE's 2 megawatt wind turbines.  (Mollevik Decl. ¶ 5; Butler Decl. Ex. 1.)  Addendum Number Two also extended the term of the Supply Agreement to December 31, 2018.  (Am. Compl. ¶ 25.)

Addendum Number Two was negotiated in part through face-to-face meetings in Schenectady, New York, involving a sales representative of SKF.  (Mollevik Decl. ¶¶ 6-7.) After Addendum Number Two was entered, SKF sales representatives continued to travel to Schenectady for meetings to discuss the ongoing business relationship, including the purchase commitments in Addendum Number Two.  (*Id.* ¶ 8.)

GERNA began issuing purchase orders for the SKF main bearings beginning around the time Addendum Number Two was entered.  Each of the purchase orders incorporated by reference a version of GE's Standard Terms of Purchase.  (*See, e.g.*, Butler Decl. Ex. 2.) Purchase orders issued before March 26, 2018 incorporate one version (the "2016 Purchase Terms") and purchase orders after that date incorporate another version (the "2018 Purchase Terms").  (Am. Compl. ¶¶ 21, 26.)  More than 76 individual purchase orders were issued by

GERNA for the main bearing at issue in this case.  (Butler Decl. ¶ 3.)

### C.    Premature Failure of SKF Main Bearings

Wind turbines using SKF main bearings began going into commercial operation at the wind farms of GE customers in November 2018.  (Am. Compl. ¶ 16.)  In April 2021, an SKF main bearing at a wind farm in Iowa experienced a serious failure.  The main bearing was removed and a tear-down inspection was conducted.  Substantial spalling and cracking was found on the rollers within the main bearing.  This type of failure was unusual both because it occurred after only about two years of operation and because the rollers are normally not the first part of a main bearing to exhibit fatigue.  (*Id.* ¶ 30.)

Following this first failure, there have been numerous similar failures of SKF main bearings.  Early signs of these failures have been detected using a standard monitoring system with an algorithm formulated to detect signs of impending failure by looking for acceleration and vibration frequencies associated with roller spalling.  As of May 2023, GE had detected 389 potential failures of SKF main bearings using these methods.  Subsequent tear downs have confirmed that these failures involved the same set of issues, including spalling and cracking of the rollers within the main bearing.  (*Id.* ¶ 31.)

On November 23, 2021, GE and SKF entered a Confidentiality, Standstill and Tolling Agreement (the "Tolling Agreement") referencing potential claims arising from the SKF main bearing failures and, among other things, tolling any applicable statutes of limitations.  (Am. Compl. ¶ 36; Butler Decl. Ex. 3.)  The Tolling Agreement contains a forum selection clause for disputes "relating to or arising from" the Tolling Agreement.  It provides that such disputes may be adjudicated in "a federal court of competent jurisdiction in New York having venue over the subject matter."  (Butler Decl. Ex. 3, § 8.)

## Argument

I.    **THE COURT HAS PERSONAL JURISDICTION OVER SKF.**

SKF contends that it is not subject to personal jurisdiction in New York for purposes of this action. At the pleading stage—prior to discovery—a plaintiff is required to make only a prima facie showing of personal jurisdiction. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). This means making allegations and averments of fact that, if credited, would be sufficient to establish jurisdiction over the defendant. *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018). In this context, the court must credit the facts averred in the pleadings and motion papers as true and must "construe[] the pleadings and affidavits in the light most favorable to the plaintiff . . . resolv[ing] all doubts in plaintiff's favor, notwithstanding 'any controverting presentation by the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d Cir. 2013)).

In a diversity case such as this one, evaluation of personal jurisdiction is a two-step process. First, the Court must determine whether jurisdiction exists under New York's long-arm statute. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). Second, the Court must determine whether the exercise of jurisdiction would be consistent with due process. *Id.*

Here, there is at least a prima facie case for personal jurisdiction over SKF because (i) the claims are related to SKF's business transactions in New York and (ii) the exercise of jurisdiction would be consistent with due process.

  **A.    GERNA's Claims Are Related to SKF's Transaction of Business in New York.**

Under New York's long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary that "transacts any business" in New York in person or through an agent.

C.P.L.R. 302(a)(1). This requires engaging in a "sustained and substantial transaction of business." *D&R Glob. Selects., S.L. v. Bodgea Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298 (2d Cir. 2017) (internal quotations omitted). Plaintiff's claim also must have a "substantial relationship" or at least an "articulable nexus" with the defendant's transaction of business in New York. *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

The Court may consider several factors in determining whether an out-of-state defendant transacted business in New York, including:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)). In considering these factors, "all factors are relevant" and "no one factor is dispositive." *Id.* at 23. "The ultimate determination is based on the totality of the circumstances." *Id.* (quoting *Agency Rent A Car*, 98 F.3d at 29).[1]

Here, all of the *Sunward Electronics* factors favor the exercise of personal jurisdiction over SKF. *First*, the purchases at issue in this case arose from the Supply Agreement entered in

---

[1] SKF cites similar, but not identical, factors from *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202 (E.D.N.Y. 2006). The factors cited by SKF, however, are the factors relevant to the supplying goods or services prong of Section 302(a)(1). *See* 411 F. Supp. 2d at 209-10. Here, GERNA is relying on the transaction of business prong. For analysis of this prong, *Wickers* uses the same *Sunward Electronics* factors as set forth herein. *See id.* at 208.

2015 between SKF and GE, a New York corporation, "acting through its GE Power & Water business, having a principal place of business at 1 River Road, Schenectady, New York 12345." (*See* Gray Decl. Ex. A.)  The specific main bearings at issue in this case were added to the Supply Agreement through an amendment in 2017 titled "Addendum Number Two."  (*See* Butler Decl. Ex. 1.)  Addendum Number Two is likewise an agreement between SKF and GE "acting through its GE Power and Water Business."  (*Id.*)

In addition to the Supply Agreement and Addendum Number Two, the individual purchase orders for the main bearing at issue are relevant agreements in this case.  GERNA issued—and SKF accepted—at least 76 individual purchase orders for the main bearings.  (*See* Butler Decl. ¶ 3.)  Each of the purchase orders lists GERNA as the purchaser with a "Legal Address" in Schenectady, New York.  *See, e.g.*, *id.* Ex. 2.[2]

*Second*, although the original Supply Agreement, which was entered in 2015, may not have been negotiated in New York, Addendum Number Two, which adds the main bearings at issue in this case to the Supply Agreement, *was* negotiated in New York.  Addendum Number Two was negotiated through in-person meetings in Schenectady, New York between Steven Curtis of SKF and David Mollevik of GE.  (*See* Mollevik Decl. ¶¶ 6-7.)  The negotiation included determination of the prices and annual purchase commitments for three SKF components.  (*Id.*)  After Amendment Number Two was entered, David Mollevik participated in further in-person meetings with SKF representatives in New York to discuss the ongoing relationship and compliance with the annual purchase commitments.  (*Id.* ¶ 8.)

---

[2] SKF emphasizes that GERNA is a limited liability company organized in Delaware and headquartered in Florida.  (*See* SKF Mem. 10.)  Because GERNA is a limited liability company, however, its citizenship is determined by the citizenship of its members.  *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).  GERNA's sole member is GE, which is a New York corporation.  (Am. Compl. ¶ 4.)  GERNA therefore should be considered as much a New York entity as GE.

*Third*, the Supply Agreement is governed by New York law.  (*See* Gray Decl. Ex. A, App. 2, § 20.)  In addition, the individual purchase orders accepted by SKF, which incorporate either the 2016 Purchase Terms or the 2018 Purchase Terms, are also governed by New York law.  (*See* Gray Decl. Exs. B & C.)

*Fourth*, the Supply Agreement provides for notices to be sent to New York, specifically, to "Sourcing Counsel" at GE Power & Water in Schenectady, New York.

Accordingly, based on the *Sunward Electronics* factors, SKF plainly transacted business in New York and is subject to the state's long-arm jurisdiction.

### B.    The Exercise of Personal Jurisdiction Over SKF Would Not Offend Due Process.

In addition to complying with the New York long-arm statute, the exercise of personal jurisdiction must also comport with due process, a constitutional inquiry focused on "the relationship among the defendant, the forum and the litigation."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Due process requires first that a defendant have minimum contacts with the forum state such that the defendant "should reasonably anticipate being haled into court there" and second, that the prospect of having to defend a suit in New York comports with "the traditional notions of fair play and substantial justice."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal quotations omitted).  The defendant's activities need not have taken place within the forum, and a single meaningful transaction with the forum may suffice to establish minimum contacts.  *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Liquid Carriers Corp. v. Am. Marine Corp.*, 375 F.2d 951, 955-56 (2d Cir. 1967) (finding jurisdiction based on a single transaction involving three trips to New York).

Here, the exercise of personal jurisdiction over SKF would be perfectly consistent with due process.  First, SKF's activities directed to New York are sufficient to meet the minimum

contacts test.  For example, when it entered the Supply Agreement, SKF intentionally contracted with GE, a New York corporation, to supply goods to GE and its affiliates.  More importantly, when the Supply Agreement was amended to add the specific main bearing at issue in this case, SKF representatives traveled to New York to negotiate that amendment in face-to-face meetings. (Mollevik Decl. ¶¶ 6-7.)  After that, SKF representatives traveled to New York once the amendment was entered to discuss, among other things, compliance with the purchase commitment contained in the amendment.  (*Id.* ¶ 8.)  These contacts—which include physical meetings involving SKF representatives in New York—are more than sufficient to meet the minimum contacts test.

Requiring SKF to litigate in New York would also not offend traditional notions of fair play and substantial justice.  As noted, SKF representatives traveled to New York to negotiate and follow up on the amendment to the Supply Agreement relevant to the claims in this case. SKF also agreed that New York law would govern the Supply Agreement and the purchase orders for the main bearings at issue.  Thus, SKF cannot reasonably claim any surprise that it might be haled into a New York court in connection with this dispute.  Moreover, because New York law applies to all aspects of this dispute, New York has an interest in adjudicating this dispute and a New York forum would be the logical place to obtain efficient resolution of the controversy.  *See World-Wide Volkswagen*, 444 U.S. at 292 (citing "the forum [s]tate's interest in adjudicating the dispute" and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" as two factors for assessing fair play and substantial justice).

SKF contends that litigating this action in New York would be unduly burdensome for SKF.  Respectfully, this argument has no merit.  SKF is located in Lansdale, Pennsylvania, a

state adjacent to New York.  Moreover, even before this action was filed, SKF selected counsel

based in New York City to address this dispute with GERNA.  (*See* Butler Decl. ¶ 7.)  Taking

these circumstances into account, a court in New York should be viewed as one of the *least*

burdensome places for SKF to litigate this dispute.

Tellingly, SKF does not offer any facts to support its bald assertion that "the burden on

SKF is substantial."  (SKF Mem. 12.)  To the contrary, SKF's declarant indicates that relevant

documents and SKF personnel are located in Pennsylvania.  (*See* Marchozzi Decl. ¶¶ 10, 17.)

However, SKF does not explain why the location of documents and potential witnesses in

Pennsylvania would make New York a burdensome place to litigate this dispute.  In addition,

SKF's claim of burden should not be taken seriously in light of SKF's request to move this

action to the Northern District of Georgia.  If SKF sees no burden litigating in far-away Georgia,

it cannot reasonably claim burden from litigating in the adjacent state of New York.

## II.    VENUE IS PROPER IN NEW YORK, BUT ONLY IN THE NORTHERN DISTRICT OF NEW YORK.

Based on further development of the facts, it appears that SKF's relevant conduct in New

York took place primarily in Schenectady, New York, which is in the Northern District of New

York.  Thus, although SKF is subject to personal jurisdiction in New York and is deemed to be a

resident of New York for venue purposes, the proper *intrastate* venue for this action under

28 U.S.C. § 1391(d) appears to be the Northern District of New York.  On this basis, it would be

appropriate to transfer this action to the Northern District of New York pursuant to 28 U.S.C.

§ 1404(a).

On a motion to dismiss for improper venue, a court generally should accept as true the

factual allegations in the non-moving party's pleadings and draw all reasonable inferences in

favor of the party opposing the motion.  *See, e.g.*, *Phillips v. Audio Active Ltd.*, 494 F.3d 378,

384 (2d Cir. 2007); *Vann v. Fischer*, No. 11-CV-1958 (JPO), 2012 WL 2384428, at *4

(S.D.N.Y. June 21, 2012).  In addition, a court may consider factual averments and documents

made available outside the complaint.  *See, e.g., Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355

(2d Cir. 2005).  For purposes of this motion, both sides have submitted factual declarations

supplementing the facts alleged in the Amended Complaint.

 The current factual record establishes that venue in *New York* is proper under 28 U.S.C.

§ 1391(b)(1), which provides that a civil action may be brought in "a judicial district in which

any defendant resides, if all defendants are residents of the State in which the district court is

located."[3]  A corporate entity like SKF is deemed to be a resident "in any judicial district in

which such defendant is subject to the court's personal jurisdiction with respect to the civil

action in question."  28 U.S.C. § 1391(c)(2).  Reading these two provisions together, SKF is

clearly a resident of New York for venue purposes because, as set forth above, SKF is subject to

personal jurisdiction in New York for the claims at issue in this action.

 However, subsection (d) of 28 U.S.C. § 1391 further clarifies the concept of residency for

corporations in a state, like New York, with multiple judicial districts.  In that case, each district

is treated like a separate state and the corporation is deemed to reside in the specific district

within which the corporation's contacts would be sufficient to establish personal jurisdiction or,

if there is no such district, "the district within which it has the most significant contacts."  28

U.S.C. § 1391(d).

 GERNA acknowledges that, based on the further development of the factual record,

subsection (d) disfavors the Southern District of New York as the proper venue in this state, and

---

[3] GERNA has previously referenced Section 1391(b)(3) as the basis for venue (*see* Am. Compl. ¶ 8) but the correct venue provision is Section 1391(b)(1).

points instead to the Northern District of New York, where GERNA's offices in Schenectady, New York, are located. The record shows that relevant meetings involving SKF took place in the Northern District of New York. On this record, it would be difficult to deny on the current record that SKF "has the most significant contacts" in New York with the Northern District of New York.

The Court has discretion to transfer this action *sua sponte* to the Northern District of New York pursuant to 28 U.S.C. § 1404(a). *See Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013) ("It is settled law in this jurisdiction that a court may transfer a case sua sponte . . . ."); s*ee also Lead Indus. Ass'n Inc. v. OSHA*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("While § 1404(b) contains the proviso that transfer may be ordered '(u)pon motion, consent or stipulation of all parties,' there is no such limitation in s 1404(a).") GERNA respectfully suggests that such transfer would be appropriate to preserve GERNA's reasonable choice of a New York forum while recognizing that venue in this district does not appear proper based on the current factual record.

## III.  THIS ACTION SHOULD NOT BE TRANSFERRED TO THE NORTHERN DISTRICT OF GEORGIA.

The Original Purchase Terms attached to the Supply Agreement state that a dispute arising out of any purchase order under the Supply Agreement may be brought "only in the U.S. District Court for the Northern District of Georgia or, if such court lacks subject matter jurisdiction, in the State or Superior Court of Georgia in Cobb County." (*See* Gray Decl. Ex. A, App. 2, § 21.1.). SKF contends that this is an enforceable forum selection clause governing the claims in this action, and moves to transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404. This motion to transfer should be denied because (i) the forum selection clause in the Original Purchase Terms has been superseded by the forum selection

clause in the Tolling Agreement, (ii) the Original Purchase Terms do not govern claims arising from purchase orders after December 31, 2018 and (iii) to the extent the forum selection clause in the Original Purchase Terms governs this dispute, transfer to the Northern District of Georgia would be unreasonable because Georgia has no logical connection to this dispute.

### A.    The Forum Selection Clause in the Supply Agreement Has Been Superseded by the Forum Selection Clause in the Tolling Agreement.

After the first main bearing failures were detected in 2021, SKF and GE, on behalf of its GE Renewable Energy Business, entered a Tolling Agreement on November 23, 2021.  (Am. Compl. ¶ 36; Butler Decl. Ex. 3.)  The Tolling Agreement recitals state that certain bearings, including the main bearings at issue in this case, were sold by SKF to GE and that, in or about May 2021, GE informed SKF of failures or malfunctions that may give rise to "Potential Claims."  (*See* Butler Decl. Ex. 3.)  The Tolling Agreement provides that "pre-litigation communications [and] discussions" related to "potential settlement negotiations" shall be treated as confidential, and that the parties will not commence any legal action with respect to Potential Claims during a standstill period.  It also provides that any statute of limitations applicable to Potential Claims will be tolled during that period.  (*See id.*)  The Tolling Agreement contains a forum selection clause, which states in relevant part:

> Any and all disputes relating to or arising from this Agreement shall be settled (i) first, by an attempt at mediation by the Parties, with the Parties to split the cost of such mediation; and (ii) second, by a federal court of competent jurisdiction in New York having venue over the subject matter.

There appears to be no dispute that the Tolling Agreement is a valid and enforceable agreement between SKF and GE—the parties to the Supply Agreement—that expressly governs sales of main bearings under the Supply Agreement and Potential Claims arising from such sales.

By its plain language, the forum selection clause in the Tolling Agreement supersedes the forum selection clause in the Supply Agreement.  The Tolling Agreement relates *specifically* to

the claims at issue in this case.  For this reason, there can be no question that this dispute "relates to" the Tolling Agreement.  Indeed, the main *purpose* of the Tolling Agreement was to address the claims eventually brought in this action.  Given that this action "relates to" the Tolling Agreement, the forum selection clause in the Tolling Agreement should apply by its plain language.  To hold otherwise would be to read the words "relating to" out of the forum selection clause in the Tolling Agreement agreed to by the parties.

When there are two or more "different contracts, each containing a forum selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide as a matter of law . . . which forum selection clause governs."  *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006).  Here, the Tolling Agreement should take precedence over the Supply Agreement because it is a subsequent agreement between the same parties.  Moreover, the Tolling Agreement was entered after the claims at issue arose, and was intended by the parties to address those specific claims.  Accordingly, the Tolling Agreement should be deemed to supersede any conflicting provisions in the Supply Agreement, rendering the Georgia choice of forum clause in the Supply Agreement a legal nullity.  Since the forum selection clause in the Supply Agreement is the sole basis for SKF's motion to transfer to Georgia, SKF's motion should be denied.

**B.    The Forum Selection Clause in the Supply Agreement Does Not Govern Claims Based on Purchases After the Expiration of the Supply Agreement.**

Although SKF attempts to characterize this as a straightforward case with one controlling forum selection clause, the reality is not so simple.  As amended by Addendum Number Two, the Supply Agreement expired on December 31, 2018.  (*See* Butler Decl. Ex. 1.)  Accordingly, the Supply Agreement does not apply to a substantial number of purchases in 2019.  Instead, those purchases are governed by the 2018 Purchase Terms, which do not specify any forum for

litigation, and instead require arbitration in New York City under the rules of the International Chamber of Commerce.  Nothing in the 2018 Purchase Terms directs the parties to litigate any claim in the Northern District of Georgia.[4]

When evaluating whether a forum selection clause is enforceable, the Second Circuit has directed courts to consider, among other factors, "whether the claims and parties involved in the suit are subject to the foreign selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).  Here, the claims arising from main bearing purchases in 2019 are *not* subject to the forum selection clause in the Supply Agreement.  Accordingly, the forum selection clause relied upon by SKF is not presumptively enforceable.

Apart from the guidance in *Martinez*, we have not been able to locate any case dealing with transfer under Section 1404 under similar circumstances, where the lawsuit involves a series of related transactions (here, purchase orders) that are governed by differing forum selection clauses depending on the timing of each transaction.  These facts, however, distinguish this case from Section 1404 cases, such as *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), in which a single forum selection clause is presumptively enforceable.

### C.    In Any Event, Transfer of This Action to the District of Georgia Would Be Unreasonable.

Even if, contrary to fact, the forum selection clause in the Supply Agreement is valid and enforceable for all the claims in this case, transfer to the District of Georgia would be

---

[4] SKF refers to compelling arbitration in the title of its motion, but does not set forth any argument for compelling arbitration in its brief.  If SKF seeks to compel arbitration of claims arising from purchases in 2019 based on the 2018 Purchase Terms, GERNA would not dispute that the arbitration clause in the 2018 Purchase Terms applies.  Of course, SKF is also free to waive the right to arbitration with respect to such claims in order to resolve all related claims in one forum.

unreasonable because there is no connection between the events relevant to this case and the Northern District of Georgia. The relevant contractual parties (SKF, GE and GERNA) are located in Pennsylvania, Delaware, New York, Massachusetts and Florida. (Am. Compl. ¶¶ 4-5.) The current factual record shows that the Supply Agreement was negotiated via conference calls involving participants in Pennsylvania, New York, Colorado and Budapest, Hungary. (Marchozzi Decl. ¶¶ 9-10.) The operative amendment to the Supply Agreement—Addendum Number Two—was negotiated in New York. (Mollevik Decl. ¶¶ 6-7.) The relevant purchase orders were issued by GERNA using a New York address. (*See, e.g.*, Butler Decl. Ex. 2.) In fact, neither the Amended Complaint nor the declarations submitted by the parties in connection with this motion identify any relevant person, event or circumstance in the State of Georgia, let alone in the Northern District of Georgia.

Transfer under Section 1404 is normally governed by various private-interest and public-interest factors. As set forth in *Atlantic Marine*:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.

*Atl. Marine*, 571 U.S. at 62 n.6 (cleaned up). These factors are not intended to be exclusive and other private-interest and public-interest factors may be considered in a particular case. *See Bank of Am., N.A.*, 943 F. Supp. 2d at 426 (listing several "non-exclusive" factors that "courts may consider" when determining whether to transfer a case); *see also Anadigics, Inc. v. Raytheon Co.*, 903 F. Supp. 615, 617 (S.D.N.Y. 1995) (factors to be considered include "trial efficiency and the interests of justice, *based on the totality of circumstances*" (emphasis added));

*Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F. Supp. 2d 955, 966 (S.D. Iowa 2006) ("District courts are not limited to the factors enumerated in the statute providing for transfer of actions to another district for the convenience of parties and witnesses, in the interest of justice, but may consider all relevant factors.").

When a valid and enforceable forum-selection clause is present, the analysis changes. The plaintiff's choice of forum is given no weight and the private-interest factors are deemed to favor transfer to the selected forum. Transfer to the selected forum may be avoided only if the public-interest factors heavily disfavor transfer to the selected forum. Further, the Supreme Court has cautioned that the forum-selection clause should be enforced "[i]n all but the most unusual cases." *Atl. Marine*, 571 U.S. at 66.

Here, because the Northern District of Georgia has no logical connection to this case, some of the traditional public-interest factors weigh heavily against transfer. For example, there is no argument that the Northern District of Georgia has a "local interest" in the case. In addition, because all the relevant agreements are governed by New York law, there is a strong interest favoring adjudicating this dispute in New York rather than in Georgia.

More importantly, the traditional public-interest factors are not exclusive, and the Court may consider other factors, including a public interest in avoiding the unreasonable or arbitrary allocation of federal court resources. Here, where the Northern District of Georgia has no connection with the parties or the claims, it would be unreasonable to burden the Northern District of Georgia with the adjudication of this dispute. *See Bank of Am., N.A.*, 943 F. Supp. 2d at 427 (noting that "judicial economy and the interests of justice are best served by transfer" when plaintiff's choice is "clearly outweighed here where the Court has no other connection with

the case . . . .").  The circumstances here make this a "most unusual case" where the public-interest factors should outweigh the presumptively adverse private-interest factors.

## IV.    GERNA'S BREACH OF WARRANTY CLAIMS SHOULD NOT BE DISMISSED.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may only be dismissed if the plaintiff fails to allege facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept as true all material allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. at 678.

Furthermore, plausibility is distinct from probability, and "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."  *Nielsen v. Rabin*, 746 F .3d 58, 62 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 556).

Here, GERNA has clearly met its burden of alleging facts that plausibly give rise to its claims for breach of express warranty and breach of implied warranty.

### A.    Breach of Express Warranty.

The Amended Complaint alleges that SKF breached an express warranty that goods delivered to GERNA would be "in strict accordance with all specifications, samples, drawings, designs or descriptions or other requirements" for the goods in question.  (Am. Compl. ¶ 22.)  This express warranty is contained in Section 9.1 of the Original Purchase Terms attached to the Supply Agreement.  (*See* Gray Decl. Ex. A, App. 2.)  The Amended Complaint further alleges that SKF designed the main bearing at issue pursuant to a technical specification provided by

GERNA.  (Am. Compl. ¶ 10.)  The technical specification states that the main bearing must have a useful life of 20 years.  (Am. Compl. ¶ 11.)  Thus, reading the express warranty language and the specification together, SKF expressly warranted that the main bearings be "in strict compliance" with the specified useful life of 20 years.  At a bare minimum, the Amended Complaint alleges a plausible claim that SKF promised a main bearing that would last for 20 years, and then failed to deliver on that promise.

SKF argues that this breach of warranty claim should be dismissed because Section 9.2 of the Original Purchase Terms provides for a 24-month time limit on the express warranty running from the "Data of Commercial Operation" of each main bearing.  Section 9.3 states that, if the goods are "found" to be defective or non-conforming during this limited warranty period, SKF shall be responsible for "all direct damages, costs and expenses" arising from the non-conforming goods, including "all installation and removal costs."  (*See* Gray Decl. Ex. A, App. 2.)  However, Section 9.3 also provides for an alternative express warranty.  It defines "Serial Defect" to refer to goods exhibiting "the same or similar defect or nonconformity as a prior defective or nonconforming good" and provides, in such case, that SKF shall replace the non-conforming goods "irrespective of whether the goods actually exhibit the nonconformity."  (*Id.*) In other words, in the case of a Serial Defect, an express warranty applies even if the nonconformity is not found within the 24-month warranty period.

SKF's position appears to be based on the mistaken assumption that the express warranty in Section 9.1 and the 24-month warranty period in Section 9.2 are one and the same.  That is incorrect.  The express warranty is the promise that, among other things, the main bearings will be in strict compliance with all specifications, including the 20-year useful life specification. The 24-month time period is a *limitation* on the express warranty.  There is nothing remarkable

about having broad express warranty language that is limited by a time period during which any breach of the express warranty must be discovered.

In any event, application of the 24-month limitation raises a host of factual questions that are not suitable for resolution on a motion to dismiss. For example: When did each failed main bearing enter commercial operation? Were the failures found within 24 months of that date? In cases where failures were not discovered within the warranty period, was there a Serial Defect and, if so, what is the effect of a Serial Defect on the express warranty?

Put differently, based on the allegations in the Amended Complaint and drawing all reasonable inferences in favor of GERNA, it is plausible to conclude that at least some of the failed main bearings were discovered within the 24-month limited warranty period. It is also plausible to conclude that a Serial Defect exists and that the effect of a Serial Defect is to apply an express warranty without regard to the 24-month warranty period. For these reasons, the Amended Complaint states a plausible claim for breach of express warranty and SKF's motion to dismiss the breach of express warranty claim should be denied.[5]

### B.      Breach of Implied Warranty.

Under Section 2-315 of the UCC, there is an implied warranty of fitness for particular purpose whenever the seller knows the "particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." The Amended Complaint alleges that the main bearings at issue were a "build to spec" part designed

---

[5] In addition, purchases in 2019, after the Supply Agreement expired, are governed solely by the 2018 Purchase Terms. The 2018 Purchase Terms contain the same express warranty that goods will be in strict compliance with all specifications. They also contain an express warranty that goods will be "fit for the particular purpose for which they are intended." The provisions relating to Serial Defect are also different. Under the 2018 Purchase Terms, the existence of a Serial Defect extends the limited warranty period by an additional 24 months. Applying these provisions likewise would require resolution of numerous factual issues.

by SKF to comply with the technical and load specifications provided by GERNA.  (Am. Compl. ¶¶ 10-11.)  Moreover, GERNA purchased the part specifically for its 2 megawatt line of onshore wind turbines.  Thus, SKF clearly knew the main bearings would be used in wind turbines for power generation, and that they had to be fit for such purpose.

SKF contends that this claim should be dismissed because the Supply Agreement specifically disclaims all implied warranties, including the implied warranty of fitness for a particular purpose.  (SKF Mem. 24.)  That may be true for purchases governed by the Supply Agreement, but the Supply Agreement expired on December 31, 2018.  (Am Compl. ¶ 25.)  For purchases in 2019, there is no disclaimer of the implied warranty of fitness for a particular purpose.  Therefore, the Amended Complaint clearly states a valid claim for breach of implied warranty, even if that claim may not apply to every purchase at issue in the case.

## **Conclusion**

For the reasons set forth herein, SKF's motion to dismiss and motion to transfer should be denied except with respect to improper venue.  To address the venue issue, GERNA respectfully suggests *sua sponte* transfer of this action to the Northern District of New York, the judicial district in New York where venue would be proper under 28 U.S.C. § 1391(b)(1).

Dated: May 24, 2024

Respectfully submitted,


 s/ Jeff E. Butler
Jeff E. Butler
Sanaz Payandeh
Tala Brewster
Sophie Brill
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001

*Attorneys for GE Renewables North America, LLC*