**Exhibit 3 to Butler Declaration**

Privileged and Confidential – Subject to FRE 408 and State Equivalents
Not Admissible in Any Proceeding

## CONFIDENTIALITY, STANDSTILL, AND TOLLING AGREEMENT

This **CONFIDENTIALITY, STANDSTILL, AND TOLLING AGREEMENT** (hereinafter, the "**Agreement**"), effective as of its execution by the last Party to sign (the "**Effective Date**"), is entered into by and among **SKF USA INC.**, a Delaware corporation, having a principal place of business at 890 Forty Foot Road, Lansdale, PA 19446 ("**SKF**"), and **GENERAL ELECTRIC COMPANY, ACTING THROUGH ITS GE RENEWABLE ENERGY BUSINESS (FORMERLY KNOWN AS GE POWER & WATER)**, a company incorporated under the laws of Delaware, with a principal location at 1 River Road, Schenectady, New York 12345, ("**GE**") and together with SKF, the "**Parties**," and each a "**Party**").[1]

**WHEREAS,** SKF sold certain goods and services to GE, including, but not limited to, certain bearings referred to as components 240/600 ECA/W33V032RE10, 240/750 ECA/W33VQ725RE10, 240/750 ECA/W33V039RE10, and 240/710 ECA/CNLV025RE10 during the time period from January 1, 2015 through December 31, 2020 (the "**Bearings**");

**WHEREAS,** on or about May 2021, GE informed SKF that certain of the Bearings allegedly failed to perform properly. As a result of these communications, GE and SKF are investigating the alleged failure or malfunction of those Bearings (the "**Potential Claims**");

**WHEREAS,** the Parties wish to cooperate in determining a root cause for any alleged failure or malfunction of the Bearings;

**WHEREAS,** in light of the pending root cause investigation, and in the spirit of collaboration, the Parties wish to share information freely and without prejudice to the Potential Claims and SKF's defenses thereto.

**NOW, THEREFORE,** in consideration of the promises, covenants and agreements contained herein and other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged), and intending to be legally bound hereby, the Parties agree as follows:

1.    Confidentiality. The Parties agree that any and all pre-litigation communications, discussions, statements, teleconferences, videoconferences, any correspondence, exhibits, documents, materials, evidence, and/or any test protocols, results, data, or other information, exchanged by or between the Parties and/or the Parties' counsel in the course of the Parties' collaborative investigation and potential settlement negotiations ("**Confidential Material**"), shall not be used by either Party, and the same shall not be admissible, in any subsequent proceedings before any court or other tribunal in any country of the world in which such proceedings may be initiated.  Such Confidential Material shall be subject to Federal Rule of Evidence 408 and/or applicable state and foreign law equivalents.

---

[1] For purposes of this Agreement, "Party" shall include any attorneys and/or experts retained by said Party such that nothing in this Agreement shall prevent a Party from sharing Confidential Materials with its legal advisors and/or experts.

Confidential Material shall be treated by the Parties and their counsel as being confidential and private, and the Parties shall use best efforts to mark such Confidential Material as "Confidential". However, information shall be deemed Confidential Material regardless of the form of transmission to the other Party hereunder, whether oral, in writing, by electronic communication or by any other method of communication.

Except as provided otherwise herein, Confidential Material shall not be shared or otherwise disclosed to any third parties without the express written consent of both SKF and GE. Any Confidential Material transmitted by one party to the other party shall remain the property of the disclosing party and shall be received by the receiving party in confidence and treated as the disclosing party's trade secrets or other proprietary information and as material in which the disclosing party owns all copyright and other intellectual property.

Confidential Material does not, however, include any such information that is:
   (a) in a receiving party's possession prior to receipt thereof from the disclosing party;
   (b) already available or that becomes available to the public through no fault of the receiving party;
   (c) received by the receiving party from a third party having a right to disclose it; or
   (d) developed by the receiving party independent of any disclosure under this Agreement, as reasonably shown by the receiving party.

The Parties further agree that this Agreement and its provisions shall be treated as Confidential Material.

2.    No Waiver of Privilege. If any documents or Confidential Material exchanged between the Parties include materials or information subject to the attorney-client privilege, work product doctrine, or any other applicable privilege, the Parties acknowledge and agree that it is the desire, intention, and mutual understanding of the Parties that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the applicable privilege. This provision applies to both intentional and unintentional disclosures.

3.    Standstill and Tolling. The Parties further agree not to commence legal action against any other Party with respect to the Potential Claims, and to engage in good faith negotiations in an attempt to resolve the Potential Claims ("**Standstill Agreement**"). This Standstill Agreement shall commence as of the Effective Date, and shall continue through December 31, 2022, unless earlier terminated by either Party on thirty (30) days' notice or extended by the Parties in writing as provided herein (the "**Standstill Period**"). The Parties further agree that any statute of limitations, whether statutory, contractual, or otherwise, applicable to any claim, cause of action, legal theory, defense, lawsuit or legal or equitable action by and between the Parties in relation to the Potential Claims shall be tolled during the Standstill Period. For the avoidance of doubt, the Standstill Agreement shall not (1) revive any claim, cause of action, legal theory, defense, lawsuit, or legal or equitable action for which the statute of limitations has already lapsed as of the Effective

Date, and (2) be construed as a waiver of, or otherwise impact, any statute of limitations defense available to any Party.

4.    No Oral Modification.  This Agreement may only be amended in writing and signed by authorized representatives of each Party whose rights are implicated in the amendment.

5.    Term. This Agreement shall terminate automatically as of midnight on December 31, 2022, unless extended in writing; provided, however, that the confidentiality and remedies provisions shall survive the termination of this Agreement.

6.    Remedies. The Parties each acknowledge that they do not have adequate remedies in damages alone in the event that the other Party violates this Agreement, and they therefore agree that they shall each be entitled to injunctive relief to prevent further violation of this Agreement by the other, in addition to their rights to damages and all other available rights and remedies.

7.    Choice of Law. This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York without regard to its choice of law rules.

8.    Disputes Regarding this Agreement. Any and all disputes relating to or arising from this Agreement shall be settled (i) first, by an attempt at mediation by the Parties, with the Parties to split the costs of such mediation; and (ii) second, by a federal court of competent jurisdiction in New York having venue over the subject matter. The Parties specifically consent to jurisdiction of the federal courts sitting in New York solely related to any lawsuits regarding this Agreement.

9.    Counterparts.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned.

10.    Electronic Signatures.  Each Party agrees that electronic signatures of the Parties are intended to authenticate this writing and to have the same force and effect as manual signatures.  "Electronic signature" means any electronic sound, symbol, or process attached to or logically associated with a record and executed and adopted by a Party with the intent to sign such record.

11.    No Admissions.  The Parties expressly acknowledge and agree that nothing in this Agreement is intended as, shall constitute, or shall be used as evidence of an admission by any Party of any wrongdoing, liability, or fault, a waiver of any right or defense, an estoppel, or an admission as to any matter of law or fact, either as among the Parties or with respect to any person or entity not a Party to this Agreement.  The Parties further agree that this Agreement will not be admissible for any purpose other than to rebut a defense based on the passage of time or delay or to defend against any claim, action, or other proceeding that may be brought, instituted, or taken by one of the Parties against another in breach of this Agreement.

3

12.  Severability.  The invalidity of any provision of this Agreement or portion of a provision hereof shall not affect the validity of any other provision or this Agreement or the remaining portion of the applicable provision.

13.  Succession. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective representatives, administrators, successors, receivers, purchasers, and assigns.

14.  Certification.  The Parties hereto further represent and declare that they have carefully read this Agreement, know its contents, have been advised by counsel as to the contents and effect of this Agreement, and that they signed this Agreement freely and voluntarily.

15.  Drafting.  Each of the Parties has participated in the drafting and negotiation of this Agreement.  For all purposes, this Agreement shall be deemed to have been drafted jointly by each of the Parties.  Any rule of construction concerning ambiguous terms being construed against the drafting Party shall not have effect with respect to this Agreement.

16.  Notices.  Any notice or other communication given or made pursuant to this Agreement shall be in writing and shall be deemed effectively given upon the earlier of actual receipt or:  (a) personal delivery to the Party to be notified; (b) when sent, if sent by electronic mail during normal business hours of the recipient, and if not sent during normal business hours, then on the recipient's next business day; (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (d) one (1) business day after deposit with a nationally recognized overnight courier, freight prepaid, specifying next business day delivery, with written verification of receipt.  All notices and other communications hereunder shall be directed as follows:

> To SKF:
>
> SKF USA Inc.
> 890 Forty Foot Road
> Lansdale, PA 19446
> Attn: Michele Dyer
> Email: Michele.L.Dyer@skf.com
>
> To GE:
>
> GE Renewable Energy
> 500 W. Monroe Street
> Chicago, IL 60661-3671
> Attn: Christal Henderson
> Email: Christal.Henderson@ge.com

17.  Miscellaneous. This Agreement is not intended to and shall not for any purposes be deemed to limit or adversely affect any other claim or defense the Parties have, or may have had, in the absence of such Agreement.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed on the date shown below by their duly authorized representatives.

**SKF USA INC.**

Signed: _____

Name: _____JOHN W. SHELTON_____

Title: _VP-STRATEGIC SEGMENTS_

Date: _Nov 22, 2021_

**GENERAL ELECTRIC COMPANY, ACTING THROUGH ITS GE POWER & WATER AND/OR GE RENEWABLE ENERGY BUSINESSES**

Signed: _____

Name: _Christal Henderson_

Title: _General Counsel, Onshore Wind GE Renewable Energy_

Date: _11/23/2021_

5