# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

GE RENEWABLES NORTH
AMERICA, LLC,

       Plaintiff,

  v.

SKF USA INC.,

       Defendant.

Civil Action No.
1:25-cv-01157-VMC

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S PARTIAL MOTION TO DISMISS

Jeff E. Butler
Sanaz Payandeh
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, NY 10001

William C. Buhay
Weinberg, Wheeler, Hudgins,
Gunn & Dial, LLC
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326

*Attorneys for Plaintiff GE Renewables
North America, LLC*

# TABLE OF CONTENTS

<u>Page</u>

Introduction ...................................................................................................1

Factual Background .........................................................................................2

     A.    GERNA Purchases of SKF Main Bearings ...............................2

     B.    Agreements Governing the Purchases ........................................4

     C.    Premature Failure of SKF Main Bearings .................................6

Argument.........................................................................................................7

    I.    GERNA'S BREACH OF WARRANTY CLAIMS SHOULD NOT BE DISMISSED. .........................................................................7

     A.    Breach of Express Warranty. ......................................................8

     B.    Breach of Implied Warranty. ....................................................13

Conclusion ...................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .........................................................................................7, 8

*GE Transp. Parts LLC v. Cent. Ry. Mfg., LLC*,
   468 F. Supp. 3d 607 (S.D.N.Y. 2020) ..................................................................12

*Glynn Ev't Coal. Inc. v. Sea Island Acquisition* LLC,
   26 F.4th 1235 (11th Cir. 2022) ...............................................................................7

*Hayes v. U.S. Bank Nat'l Ass'n*,
   648 F. Appx 883 (11th Cir. 2016) ................................................................. 14, 15

*Johnson v. City of Atlanta*,
   107 F.4th 1292 (11th Cir. 2024) ...........................................................................15

*McClure v. Toyota Motor Corp.*,
   759 F. Supp. 3d 1333 (N.D. Ga. 2024) ................................................................15

*Shop Vac Corp. v. BCL Magnetics Ltd.*,
   No. 04-CV-262, 2005 WL 2739161 (N.D.N.Y. Oct. 24, 2005) ...........................14

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
   574 F. Supp. 3d 1260 (N.D. Ga. 2021) ................................................................15

## Statutes and Rules

Fed. R. Civ. P. 12(b)(6) ...............................................................................................7

N.Y. U.C.C. § 2-315 ................................................................................................. 13

Plaintiff GE Renewables North America, LLC ("GERNA") submits this Response in opposition to Defendant SKF USA Inc.'s ("SKF") partial motion to dismiss.

## Introduction

In this action, GERNA seeks to recover costs associated with defective wind turbine main bearings manufactured and sold by SKF. Although the parts were warranted to have a service life of 20 years, most of the SKF bearings have failed after only two to three years of commercial operation, less than 1/6 of their intended lifespan. In each case of failure, the bearing must be replaced with a bearing from an alternate supplier, resulting in a significant expense to GERNA. SKF has denied any responsibility and refuses to honor its contractual obligations.

The costs to GERNA associated with these SKF main bearing failures have been staggering:

- As of May 2025, 817 (out of a total of 1,723) SKF main bearings have failed and GERNA was required to replace them at a total cost of $231 million.

- Both the number of failures and the replacement costs to GERNA have nearly **tripled** in the two years since GERNA filed this lawsuit.

- GERNA estimates that 100% of SKF bearings in commercial operation will fail long before their warranted life of 20 years.

- The total cost to GERNA of replacing all SKF main bearings in commercial operation will be at least **$386 million**.

- In addition, GERNA has incurred liquidated damages payouts to its customers. The liquidated damages currently total $40 million and an

1

additional $40 million is expected to be paid in the future.

- Furthermore, due to an accelerated rate of SKF failures, GERNA had to significantly expand its operational capacity. This involved more than doubling the number of labor crews and cranes, largely by increasing reliance on external vendors.

By supplying main bearings that consistently fail long before their expected service life, SKF has breached the terms of sale. Based on the parties' agreements, the Amended Complaint asserts four causes of action against SKF, including breach of contract, breach of express warranty, breach of implied warranty and indemnification. The fifth claim, for declaratory judgment, seeks similar relief for future failures. All of these claims involve essentially the same underlying facts and therefore the same discovery.

SKF's partial motion to dismiss (ECF No. 80) challenges "fewer than all counts of the complaint," something that this Court "discourage[s]" because it delays discovery. (Standing Order, ECF No. 74 at 33.) Of all the claims, SKF challenges only the claims for breach of express warranty and breach of implied warranty. SKF's arguments, however, are either legally flawed or depend on facts outside of the Amended Complaint and, for this reason, cannot be resolved on a motion to dismiss. Accordingly, SKF's motion should be denied.

## Factual Background

### A.    GERNA Purchases of SKF Main Bearings

GERNA manufactures and sells wind turbines for electric power generation.

(Am. Compl. ¶ 4, ECF No. 22.)  The main bearing is a key component of a wind turbine.  It holds the shaft connecting the rotor assembly to the generator and allows the shaft to rotate freely despite being subject to substantial loads during normal operations.  A main bearing generally consists of an inner ring attached to the shaft and an outer ring attached to the turbine casing.  Between these rings are rollers, which allow the inner ring to rotate independently from the outer ring.  (*Id.* ¶ 9.)

The main bearings at issue in this case were a "build to spec" part.  GERNA provided a part specification to SKF, and SKF designed a main bearing to meet the specification.  The final specification for this part is dated November 15, 2017, and it includes a technical specification and various load specifications.  (*Id.* ¶ 10.)

The technical specification document makes it clear that the main bearing must have a service life of 20 years.  For example, the specification states: "The main bearing has to handle loads for the specified wind class for a period of 20 years.  In addition, it must sustain transient loads like grid failure, over-speed events, braking and emergency stops as well as loads due to extreme wind and environmental conditions."  (*Id.* ¶¶ 11-12.)  Elsewhere, the specification states that the bearing "shall be designed for 20 years under full load conditions."  (*Id.* ¶ 12.)

GERNA began ordering this part from SKF in late 2017.  GERNA purchased a total of 1,723 of the SKF main bearings, with approximately 1,300

3

ordered in 2018 and 400 ordered in 2019.  GERNA discontinued purchasing main bearings from SKF in June 2019.  (*Id.* ¶ 15.)

### B.    Agreements Governing the Purchases

GERNA's purchases in 2017 and 2018 were governed by a pre-existing Supply Agreement between SKF and GE, acting through its Power & Water Business, that was entered in January 2015 (the "Supply Agreement").[1]  The Supply Agreement includes an Appendix 1 that specifies the SKF parts covered by the Supply Agreement.  At the time the Supply Agreement was entered, Appendix 1 did not include the main bearing at issue in this case, as that part had yet to be developed by SKF.  The Supply Agreement also includes an Appendix 2, which is a version of the GE Power & Water Standard Terms of Purchase (the "Original Purchase Terms").  GERNA later updated those terms and conditions in 2016 (the "2016 Terms") and again in 2018 (the "2018 Terms").  (ECF No. 80-5 (2016 Terms); ECF No. 80-6 (2018 Terms).)

The purchases are also governed by individual GERNA purchase orders which, when accepted by SKF, form part of the contract of sale.  In case of any conflict, Section 1(c) of the Supply Agreement establishes an order of precedence:

---

[1] Because all the contract documents are already on the docket, we cite to the documents directly.  For the 2015 Supply Agreement and Appendices, see ECF No. 80-4.

(1) the Supply Agreement, (2) the appendices to the Supply Agreement, (3) the purchase orders, and (4) specifications and related documents incorporated by reference.  The clear implication is that each of these documents must be considered part of the contract of sale.

As originally entered, the term of the Supply Agreement expired on January 1, 2018.  (*See* Supply Agreement § 3(a).)  In December 2017, the main bearings at issue in this case were added to Appendix 1 to the Supply Agreement by way of an addendum, referred to as Addendum Number Two.  (ECF No. 43-1.)  Addendum Number Two also extended the term of the Supply Agreement to December 31, 2018.  (*Id.* ¶ 1.)

GERNA began issuing purchase orders for the SKF main bearings beginning around the time Addendum Number Two was entered.  The main bearing purchase orders expressly reference the technical specification for the main bearing, denominated as item number 446W128, as illustrated by the following excerpt:

| Drawing Revision details | | | | |
| Item Number | Item Revision | Drawing Number | Drawing Revision | Drawing Description |
|---|---|---|---|---|
| 446W2140P001 | 001 | P23A-WE-0001 | AA | SERIALIZATION OF GE WIND ENERGY COMPONENTS |
| 446W2140P001 | 001 | 444W6530 | - | Main gearbox and main bearing loads specification for 2.5-116 GE/LM56.9 80, 87, 94 and 118 m hub height, 60Hz, STW/CWE, IECS based on IEC61400-1 Ed.3 |
| 446W2140P001 | 001 | 444W2126 | A | Technical loads specification for Gearbox Mainbearing - 2.3-116 50Hz/60Hz 80HH/94HH, 2.3-107/2.0-116 94HH 60Hz, 2.2-107 Quebec 60Hz 80HH configurations |
| 446W2140P001 | 001 | 109W8816 | - | Technical Specification Wind Turbine Generator Systems 2.3-107 & 2.0-116 Main bearing and gearbox for 2.3-107 with GE52.2 blades, 80m HH, 50Hz STW & 60Hz STW/CWE, IEC S (61400-1 Ed.3) DDR2 Loads set and 2.0-116 with GE/LM56.9 blades, 80mHH, 60Hz, STW/CWE, IEC S (61400-1 Ed.3) DDR loads |
| 446W2140P001 | 001 | 446W4128 | A | Main Bearing Technical Specification |
| 446W2140P001 | 001 | 446W2140 | B | MAIN BEARING |
| 446W2140P001 | 001 | 109W7455 | - | Technical Specification Wind Turbine Generator Systems 2.2-107 Main Gearbox & Main Bearing Extreme and Fatigue Loads for 2.2-107 with GE52.2, 80m HH, 50Hz & 60Hz, STW/CWE IEC S (61400-1 Ed.2)CDR |

(ECF No. 43-2.)  This is the technical specification that contains the 20-year

service life requirement.  (*See* Am. Compl. ¶¶ 11, 12, 28.)  SKF accepted these

purchase orders and supplied the main bearings ordered by GERNA.  (*Id.* ¶¶ 11,

12, 29.)

### C.    **Premature Failure of SKF Main Bearings**

Wind turbines using SKF main bearings began going into commercial

operation at the wind farms of GERNA customers in November 2018.  (Am.

Compl. ¶ 16.)  In April 2021, an SKF main bearing at a wind farm in Iowa

experienced a serious failure.  The main bearing was removed and a tear-down

inspection was conducted.  Substantial spalling and cracking was found on the

rollers within the main bearing.  This type of failure was unusual both because it

occurred after only about two years of operation and because the rollers are

normally not the first part of a main bearing to exhibit fatigue.  (*Id.* ¶ 30.)

Following this first failure, there have been numerous similar failures of SKF main bearings.  Early signs of these failures have been detected using a monitoring system with an algorithm formulated to detect acceleration and vibration frequencies associated with roller spalling.  Subsequent tear-downs have confirmed that these failures involved the same set of issues, including spalling and cracking of the rollers within the main bearing.  (*Id.* ¶ 31.)

The costs to GERNA of these failures have been substantial.  As of May 2025, there have been a total of 817 replacements at a cost to GERNA of $231 million.  GERNA has estimated that the total cost of replacing all SKF main bearings in commercial operation will be at least $386 million.  (*Id.* ¶ 34.)  To date, SKF has refused to reimburse these costs.

## <u>Argument</u>

## I.    **GERNA'S BREACH OF WARRANTY CLAIMS SHOULD NOT BE DISMISSED.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may only be dismissed if the plaintiff fails to allege facts that "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept as true all material allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Glynn Ev't Coal. Inc. v. Sea Island Acquisition* LLC, 26 F.4th 1235, 1240 (11th Cir. 2022).  The standard of "facial

plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Plausibility, however, should be distinguished from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted).

Defendant SKF has moved to dismiss claims for breach of express and implied warranties.  The Court should deny SKF's motion because GERNA has alleged facts that plausibly give rise to those claims under New York contract law.

## A.  Breach of Express Warranty.

The Amended Complaint alleges that SKF breached an express warranty that goods delivered to GERNA would be "in strict accordance with all specifications, samples, drawings, designs and descriptions or other requirements" for the goods in question.  (Am. Compl. ¶ 22.)  This express warranty is contained in Section 9.1 of the Original Purchase Terms attached to the Supply Agreement. (Supply Agreement App. 2 § 9.1.)  The Amended Complaint further alleges that SKF designed the main bearing at issue pursuant to a technical specification provided by GERNA.  (Am. Compl. ¶ 10.)  The technical specification states that the main bearing must have a service life of 20 years.  (*Id*. ¶ 11.)  Thus, reading the

express warranty language and the specification together, SKF expressly warranted that the main bearings would be "in strict compliance" with the specified service life of 20 years.  At a bare minimum, the Amended Complaint alleges a plausible claim that SKF promised a main bearing that would operate for 20 years, and then failed to deliver on that promise.

The express warranty in Section 9.1 is limited by Section 9.2, which provides for a 24-month time limit on the express warranty running from the "Date of Commercial Operation" of each main bearing.  (Supply Agreement App. 2 § 9.2.)  Section 9.3 clarifies that, if the goods are "found" to be defective or non-conforming during this limited warranty period, SKF shall be responsible for "all direct damages, costs and expenses" arising from the non-conforming goods, including "all installation and removal costs."  (*Id.* § 9.3.)  However, Section 9.3 also provides for an alternative express warranty.  It defines "Serial Defect" to refer to goods exhibiting "the same or similar defect or nonconformity as a prior defective or nonconforming good" and provides, in such case, that SKF shall replace the non-conforming goods "irrespective of whether the goods actually exhibit the nonconformity."  (*Id.*)  In other words, in the case of a Serial Defect, an express warranty applies even if the nonconformity is not found within the 24-month warranty period.

On the basis of these provisions, SKF argues that the Supply Agreement

provides only a two-year warranty, not a 20-year warranty. (*See* Mem. in Supp. of Def.'s Partial Mot. to Dismiss at 7, ECF No. 80-1 ("SKF Mem.").) This argument conflates the express warranty in Section 9.1 with the time period in Section 9.2. These are, in fact, separate and distinct provisions. The express warranty in Section 9.1 is the promise that, among other things, the main bearings will be in strict compliance with all specifications, including the 20-year service life requirement. The time period in Section 9.2 is a *limitation* on the express warranty. It states that non-compliance with the warranty must be discovered within 24 months of commercial operation, except in the case of a Serial Defect. There is nothing remarkable about having a broad express warranty that is limited by a time period during which a breach of the express warranty must be discovered.

Application of the 24-month time limitation raises a host of factual questions that are not suitable for resolution on a motion to dismiss. For example: When did each failed main bearing enter commercial operation? Were the failures found within 24 months of that date? In cases where failures were not discovered within the warranty period, was there a Serial Defect and, if so, what is the effect of a Serial Defect on the express warranty?

Put differently, based on the allegations in the Amended Complaint and drawing all reasonable inferences in favor of GERNA, it is plausible to conclude

that some of the failed main bearings were discovered within the 24-month limited

warranty period.  It is also plausible to conclude that a Serial Defect exists and that

the effect of a Serial Defect is to apply an express warranty without regard to the

24-month time period.  For these reasons, the Amended Complaint states a

plausible claim for breach of express warranty, and SKF's motion to dismiss the

breach of express warranty claim should be denied.

Acknowledging that the express warranty in Section 9.1 requires "strict

compliance with all specifications," SKF nevertheless contends that the word

"specifications" in Section 9.1 is too "indeterminate" to qualify as a warranty

under New York law.  (*See* SKF Mem. at 8.)  SKF's argument appears to be that,

because the *Supply Agreement* (ignoring the purchase orders) does not specifically

reference the technical specification, the 20-year useful life requirement contained

therein is not incorporated by reference into the express warranty.

This argument takes an overly narrow view of the contract at issue in this

case.  The Supply Agreement is only one part of the relevant contract.  It is a

framework agreement that provides purchase terms that govern individual purchase

orders.  The purchase orders themselves, when accepted by SKF, also form part of

the contract of sale.  This is plainly stated in Section 1(c) of the Supply Agreement:

"All purchases under this Agreement are subject to issuance of purchase orders

('Orders') by Buyer pursuant to [the Original Purchase Terms] which are

11

incorporated by reference as Appendix 2, and any agreed updates, changes and modifications to the same." (Supply Agreement § 1(c).) Thus, the content of the purchase orders must be considered when evaluating the specificity of the overall agreement.

This is significant because, as alleged in the Amended Complaint, purchase orders for individual sales expressly reference the technical specification containing the 20-year service life requirement. (*See* Am. Compl. ¶ 28.) The purchase orders, read together with Section 9.1 of the Original Purchase Terms, include an express warranty of "strict accordance" with the terms of the technical specification, including the 20-year service life requirement. Given the express references to the technical specification in the purchase orders, it would be absurd to argue that the governing agreement is unclear about application of the technical specification.

SKF's argument is based on a case stating that reference to "a general class of extrinsic documents rather than a specific document" may be insufficient for incorporation by reference into an express warranty. *See GE Transp. Parts LLC v. Cent. Ry. Mfg., LLC*, 468 F. Supp. 3d 607, 615 (S.D.N.Y. 2020) (quotation omitted). But that case undermines rather than supports SKF's position.

*GE Transp. Parts* did not involve a purchase order with a reference to a particular specification. Instead, the governing agreement in that case referred

12

only generally to "specifications furnished or approved by" the buyer.  *See id.* at 614-15.  The court explained that, under New York law, "the paper to be incorporated into a written instrument by reference *must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt*."  *Id.* at 615 (quotation omitted) (emphasis added).

That is exactly the case here.  As explained and illustrated above, the purchase orders here refer—by specific item number—to the technical specification containing the 20-year service life requirement.  This leaves no room for doubt that the technical specification is incorporated by reference.  Thus, the "indefiniteness" cases cited by SKF have no application to the facts as alleged in the Amended Complaint.

### B.    Breach of Implied Warranty.

Under Section 2-315 of the UCC, there is an implied warranty of fitness for particular purpose whenever the seller knows the "particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."

The Amended Complaint alleges that the main bearings at issue were a "build to spec" part designed by SKF to comply with the technical and load specifications provided by GERNA.  (Am. Compl. ¶¶ 10-11.)  Moreover, GERNA purchased the part specifically for its 2-megawatt line of onshore wind turbines.

(*See id.* ¶ 14.)  Thus, SKF knew the main bearings would be used in wind turbines for power generation, and that they had to be fit for such purpose.  That suffices to state a claim.  *See Shop Vac Corp. v. BCL Magnetics Ltd.*, No. 04-CV-262, 2005 WL 2739161, at *5 (N.D.N.Y. Oct. 24, 2005) (denying summary judgment on implied warranty of fitness for a particular purpose).

SKF does not dispute the particular purpose but instead contends that the Supply Agreement disclaims all implied warranties, including fitness for a particular purpose.  (SKF Mem. at 24.)  That argument fails for two reasons.

*First*, even assuming that the disclaimer in the Supply Agreement applies, the Supply Agreement expired on December 31, 2018.  (Am Compl. ¶ 25.) Thus, for purchases made in 2019, there is no disclaimer of implied warranties.  Therefore, the Amended Complaint states a viable claim for breach of implied warranty with respect to those purchases at a minimum.

SKF—anticipating this argument in its second attempt at this motion— contends that the term of the Supply Agreement was extended until "at least December 22, 2020" per a document called Addendum Number Three.  (SKF Mem. at 11.)  This argument, however, is based on facts outside the Amended Complaint—including a declaration from SKF executive Jeffrey Marchozzi and an email chain attaching an unsigned version of Addendum Number Three.  (*See id.*)

But the Court may not consider such facts on a Motion to Dismiss because

14

they are not included in the Amended Complaint.  *See, e.g., Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, 574 F. Supp. 3d 1260, 1272 n.7 (N.D. Ga. 2021) ("A court is limited to reviewing what is alleged within the four corners of the complaint.") (citing *Hayes v. U.S. Bank Nat'l Ass'n*, 648 F. Appx 883, 887 (11th Cir. 2016)) (quotation omitted).  The Amended Complaint does not address the negotiation or supposed performance of Addendum Number Three.  Nor can this document be deemed "incorporated by reference" into the Complaint, because the document is unsigned and its applicability is disputed.  *See, e.g., McClure v. Toyota Motor Corp.*, 759 F. Supp. 3d 1333, 1343 n.2 (N.D. Ga. 2024) (citing *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024)).  Thus, SKF's argument about a purported extension of the Supply Agreement raises factual issues that cannot be resolved on a motion to dismiss.

*Second*, neither the 2016 Terms nor the 2018 Terms carry any such disclaimer, and at this stage the Court should not assume that § 9.3 of the Original Purchase Terms applies to any particular order of the main bearings at issue.  As the Complaint alleges, the purchase orders were issued beginning in 2017, and they incorporated a link to the purchase terms in effect at the time.  (*See* Am. Compl. §§ 26, 28.)  It is therefore plausible that the 2016 Terms or the 2018 Terms apply to those purchases instead of the Original Purchase Terms.  If so, the disclaimer in the Original Purchase Terms would not limit GERNA's ability to recover from

15

SKF for an implied warranty.[2]

Accordingly, for both of these reasons, SKF's motion to dismiss the breach of implied warranty claim should be denied.

---

[2] With the benefit of a prior attempt at this Motion, SKF cherry picks a line from GERNA's prior Response to claim that GERNA "concede[d]" that the disclaimer applied. (SKF Mem. at 10.) This is not correct. To the extent the prior Response (Pl.'s Mem. in Opp. to Def's Mot. to Dismiss, ECF No. 42) can be considered, SKF overreads a single turn of phrase from this submission. When SKF claimed that the disclaimer applied to all claims, the Response says only: "That *may* be true for purchases governed by the Supply Agreement" before making the alternative argument above. (*Id.* at 22 (emphasis added on "may").) GERNA did not concede anything by phrasing its argument in this way.

## Conclusion

For the reasons set forth herein, SKF's partial motion to dismiss should be denied.

Dated:  June 5, 2025

Respectfully submitted,

*/s/William C. Buhay*
William C. Buhay
Georgia Bar No. 093940
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
3344 Peachtree Road NE, Suite 2400
Atlanta, GA 30326

Jeff E. Butler
Sanaz Payandeh
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, NY 10001
*Attorneys for Plaintiff GE Renewables North America, LLC*

17

## LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE

I hereby certify that this brief has been prepared in 14-point Times New Roman font in accordance with Local Rule 5.1(C).

Dated:  June 5, 2025

 /s/ *William C. Buhay*
William C. Buhay

## CERTIFICATE OF SERVICE

This is to certify that I have filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically generate notice of filing to parties of record.

Dated:  June 5, 2025

/s/ William C. Buhay

William C. Buhay
Ga Bar No. 093940